UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:

JONATHON DANIEL SHORT,                        Case No. 18-45299

                                              Chapter 7
                    Debtor.
_____/              Judge Thomas J. Tucker

TIMOTHY  MILLER, TRUSTEE,

        Plaintiff,
v.                                            Adv. Pro. No. 19-4448

ANDREA SHORT

and

JONATHON DANIEL SHORT,

        Defendants.
_____/

**OPINION REGARDING DEFENDANTS' TWO MOTIONS
TO DISMISS AND FOR SUMMARY JUDGMENT**

## I.  Introduction

        The pending motions in this adversary proceeding require the Court to decide whether a

Chapter 7 Trustee, as successor to the Debtor's interests and on behalf of the bankruptcy estate,

can assert a claim for the imposition of a constructive trust on real property titled in the name of

a non-debtor.  The Court concludes that the answer is "yes," if the requirements are met for such

a constructive trust under applicable state law.  The Court concludes that such a claim is not

barred the Sixth Circuit Court of Appeals decision in *XL/Datacomp, Inc. v. Wilson* (*In re*

*Omegas Group, Inc.*), 16 F.3d 1443 (6th Cir. 1994), or later Sixth Circuit cases.

The issue arises in the context of two motions filed by the Defendants: (1) the motion entitled "Defendant Jonath[o]n D. and Andrea Short's Motion to Dismiss Plaintiff's Complaint, and for Summary Judgment" (Docket # 26 the "Defendants' First Motion"); and (2) the motion entitled "Defendant, Jonath[o]n D. and Andrea Short's Motion to Dismiss Plaintiff's Amended Complaint, and, for Summary Judgment" (Docket # 94 the "Defendants' Second Motion").

For the reasons stated below, the Court must deny the Defendants' request for dismissal of, or summary judgment on, the Plaintiff Trustee's constructive trust claim. Based on the arguments made in Defendants' motions, and on the present record, genuine issues of material fact preclude summary judgment in favor of the Defendants.

## II. Relevant facts and procedural history

## A. Purchase and renovation of Swan Creek residence

Defendant Andrea Short ("Andrea") is the wife of the Defendant Jonathon Short ("Jonathon"), the Debtor in the underlying Chapter 7 bankruptcy case. Jonathon, Andrea, and their children reside at 8590 Swan Creek Road, Newport Michigan (the "Property"), as they did when the underlying Chapter 7 bankruptcy case was filed by Jonathon on April 11, 2018.

The Property was purchased in November 2009 from the United States Department of Housing and Urban Development, for $18,000.00.[1] The Property was purchased with proceeds from a personal loan taken out by Jonathon, Andrea, and Andrea's parents.[2]

---

[1] Deed attached to Plaintiff's Supplemental Response as Exhibit I (Docket # 96-10).

[2] Deposition testimony of Andrea Short attached as Exhibit E to the Plaintiff's Supplemental Response (Docket # 96-6) at pdf pp. 2-3; Deposition testimony of Jonathon Short attached as Exhibit H to the Plaintiff's Supplemental Response (Docket # 96-9) at pdf p. 6.

2

The Property is titled solely in Andrea's name.[3]  The Defendants say that this is because Jonathon was working at the time of the closing on the Property, and could not attend.[4] Otherwise, according to Andrea, Jonathon's name also would have been on the deed.[5]  The Trustee alleges that the Property was titled in Andrea's name alone in an effort to shield it from Jonathon's creditors.[6]

The Property was in poor condition and the Defendants did not move into the house until fifteen to eighteen months after it was purchased.[7]  Before the Defendants and their children could move into the Property, the new roof had to be replaced and the interior of the house had to be "rehabbed."[8]  The new roof was installed by a contractor.[9]  The interior drywall was done by Jonathon, Andrea, family and friends.[10]  Jonathon testified that he did plumbing work; an electrician friend of Andrea's father helped Jonathon with the electrical work; and Andrea's father installed most of the insulation.[11] Jonathon's brother, a heating and cooling contractor,

---

[3]  Deed attached to Plaintiff's Supplemental Response as Exhibit I (Docket # 96-10).

[4]  Deposition testimony of Andrea Short attached as Exhibit E to Plaintiff's Supplemental Response (Docket # 96-6) at pdf p. 3; Deposition testimony of Jonathon Short attached as Exhibit H to the Plaintiff's Supplemental Response (Docket # 96-9) at pdf p. 6.

[5]  Deposition testimony of Andrea Short attached as Exhibit E to Plaintiff's Supplemental Response (Docket # 96-6) at pdf p. 3.

[6]  First Am. Comp. (Docket # 85) at ¶ 10.

[7]  Deposition testimony of Jonathon Short attached as Exhibit H to the Plaintiff's Supplemental Response (Docket # 96-9) at pdf p. 6.

[8]  *Id.* at pdf p. 8.

[9]  *Id.*

[10]  *Id.*

[11]  *Id.* at pdf p. 9.

performed the labor associated with updating the furnace and air conditioning.[12] The bathrooms were rehabbed with help from friends and family.[13] The Defendants continued to do work on the kitchen after moving into the Property.[14] They also financed foundation and waterproofing work that was done on the basement and received a grant for lead remediation.[15]

The Defendants say that they paid off the loan used to purchase the Property with funds from their joint bank account.[16] Andrea testified in her deposition that the cost of repairs made to the Property was paid out of the Defendants' paychecks.[17] But the Defendants admit that, throughout their marriage, Jonathon was "the primary wage-earner with his income providing nearly all the family's household income."[18] Andrea testified that she worked full time at Dairy Queen, earning $10 per hour, until October 2010.[19] In December 2010, she went to school for

---

[12] *Id.*

[13] *Id.* at pdf p. 10.

[14] *Id.* at pdf p. 9.

[15] *Id.* at pdf pp. 9-10.

[16] Defendant Andrea Short's Answers to Interrogatories/Requests to Admit attached as Exhibit E to the Plaintiff's Response (Docket # 35-5) at pdf p. 6; Defendant Jonathon Short's Answers to Interrogatories/Request to Admit attached to Plaintiff's Response as Exhibit C (Docket #35-3) at pdf p. 4.

[17] Deposition of Andrea Short attached as Exhibit E to Plaintiff's Supplemental Response (Docket #96-6) at pdf p. 3.

[18] Defendant Andrea Short's Answers to Interrogatories/Requests to Admit attached as Exhibit E to the Plaintiff's Response (Docket # 35-5) at pdf p. 9; Defendant Jonathon Short's Answers to Interrogatories/Request to Admit attached to the Plaintiff's Response as Exhibit C (Docket #35-3) at pdf pp. 9-10.

[19] Deposition of Andrea Short attached as Exhibit E to the Plaintiff's Supplemental Response (Docket # 96-6) at pdf p. 3.

nine months to get a certificate as a medical assistant.[20]  In 2012, she began working at a hospital part time, 56 hours every two weeks, for $12 per hour.[21]  In 2018, she reduced her hours to less than 20 hours per week.[22]

As a result of the repairs and remodeling, the value of the Property greatly increased from the $18,000 price paid for it in 2009.[23]  In December 2017, a real estate agent contacted by Andrea estimated that the market value of the Property was between $99,000 and $171,000.[24] The Trustee alleges that the current value of the Property is at least $170,000.[25]

## B.  Defendants' prior bankruptcy cases

Before the Property was purchased in 2009, the Defendants jointly filed two bankruptcy cases.  The first of these was a Chapter 13 case filed on November 8, 2007.[26]  At that time, the Defendants were residing in Monroe, Michigan.  According to the Schedule A filed in that case, Andrea was the sole owner of the Monroe residence.[27]  The Chapter 13 case was dismissed, without a discharge, on March 6, 2008.[28]

---

[20]  *Id.*

[21]  *Id.*

[22]  *Id.* at pdf p. 4.

[23]  Defendant Jonathon Short's Answers to Interrogatories/Request to Admit attached to Plaintiff's Response as Exhibit C (Docket # 35-3) at pdf p.10.

[24]  2004 Examination Testimony of Jonathon Short attached as Exhibit D to Plaintiff's Response (Docket # 35-4) at pdf pp. 5-7.

[25]  First Am. Comp. (Docket # 85) at ¶ 17.

[26]  Case No. 07-62719.

[27]  Docket # 1 in Case No. 07-63719 at pdf p. 9.

[28]  *Id.* at Docket # 41.

5

Shortly thereafter, on March 28, 2008, the Defendants filed another Chapter 13 case.[29] Again, Andrea was named as the sole owner of the Monroe residence.[30]  At the Defendants' request, the case was converted to Chapter 7.[31]  The United States Trustee filed an adversary complaint for denial of discharge against Jonathon, based on the eight year bar under 11 U.S.C. § 727(a)(8).[32]  A default judgment was entered against Jonathon, and his discharge was denied.[33] Andrea was granted a discharge.[34]

## C. The current bankruptcy case and the Trustee's adversary complaint

Jonathon filed the current Chapter 7 bankruptcy case in April 2018, and listed the Property as his residence.[35]  Jonathon did not list any ownership interest in the Property, or in any other real property, in his bankruptcy schedules.[36]

The Trustee filed this adversary proceeding on October 6, 2019, alleging claims relating to the Property.  The Trustee alleged a claim of constructive trust, based on Michigan law, against Andrea (Count I), a claim seeking delivery of the Property, as property of the estate,

---

[29]  Case No. 08-47474.

[30]  Docket # 1 in Case No. 08-47474 at pdf p. 9.

[31]  Docket # 37 in Case No. 08-47474..

[32]  Adversary No. 08-05268.  Jonathon had received a discharge in a prior Chapter 7 case that he alone filed on December 23, 2002 (Case No. 02-70735).

[33]  Case No. 08-47474 (Docket # 51).

[34]  Case No. 08-47474 (Docket # 52).

[35]  Docket # 1 in Case No. 18-45299 at pdf p. 2.

[36]  Part 1 of Schedule A/B instructs the debtor to "Describe Each Residence, Building, Land, or Other Real Estate You Own or Have an Interest In" and asks "Do you own or have any legal or equitable interest in any residence, building, land, or similar property?" *See id.*  pdf p. 8.

under 11 U.S.C. § 542(a) against Jonathon (Count II), and a claim seeking a sale of the Property under 11 U.S.C. § 363(h) against both Defendants (Count III).[37]

The Defendants filed a motion to dismiss and for summary judgment on the original complaint (the "Defendants' First Motion").[38]  The Defendants argued that, as a matter of federal bankruptcy law, a constructive trust cannot be imposed by this Court.  In support of this argument, the Defendants relied on the Sixth Circuit decision of *XL/Datacomp, Inc. v. Wilson* (*In re Omegas Group, Inc.*), 16 F.3d 1443 (6th Cir. 1994).  The Defendants also argued that, under the facts of this case, the requirements under Michigan law for the imposition of a constructive trust are not satisfied.

The Trustee responded that *Omegas Group* is distinguishable, and does not prevent the imposition of a constructive trust in this case.[39]  The Trustee also argued that a constructive trust is appropriate in this case, under Michigan law.

Before the Defendants' First Motion could be heard, the Trustee filed a motion to amend the complaint, to add claims based on theories of joint venture and partnership.[40]  The Court granted the motion to amend, without prejudice to the Defendants' pending motion.[41]

---

[37] Docket # 1.

[38] Defs.' Mot. (Docket # 26).

[39] Trustee's Resp. (Docket # 35).

[40] Docket # 80.

[41] Docket # 84.

On September 16, 2020, the Trustee filed his amended complaint (the "Amended Complaint"), and that is the currently operative complaint in this case.[42] Count I of the Amended Complaint seeks the imposition of a constructive trust against the Property. Andrea Short is named as the Defendant under this Count, and the Trustee alleges that:

> In the present case, Debtor's sole income provided for the vast majority of the funds used to purchase of [sic] the [P]roperty, for its restoration and maintenance, and to satisfy its tax burdens.
>
> By contrast, Mrs. Short has only minimally contributed, if at all, to the current equity in the Property.
>
> Even though Debtor contributed substantially all of the equity to the Property (as Debtor and Mrs. Short intended), Debtor and Mrs. Short titled the Property in Mrs. Short's name solely to prevent Debtor's creditors from reaching the Property, thus unjustly enriching Mrs. Short at the expense of Debtor's creditors, whom Debtor now seeks to discharge without paying anything.
>
> Though Mrs. Short holds legal title to the Property, the Court should impose a constructive trust upon the Property's equity in favor of the Debtor by virtue of his financial contributions and the improvements made by his labor, which would otherwise unjustly inure only to the benefit of Mrs. Short.[43]

The Amended Complaint also alleges that:

> Upon information and belief, even though Debtor and Mrs. Short intended to occupy the Property together and intended Debtor to make substantially all financial contributions to the Property, they made the decision to _fraudulently_ title the Property solely in Mrs. Short's name to protect it as the Debtor was insolvent at the time having his bankruptcy discharge denied less than 11 months prior to the acquisition of the Property.[44]

---

[42] Docket # 85.

[43] First Am. Comp. (Docket # 85) at pdf p. 4, ¶¶ 23-26 (paragraph numbering omitted).

[44] *Id.* at pdf p. 2 ¶ 10 (emphasis in original).

Count II of the Amended Complaint names Jonathon as the Defendant and seeks delivery of the equity in the Property, under 11 U.S.C. § 542(a). It alleges that "the equity in the Property is held by [Jonathon] in constructive trust," and "that [t]he vast majority of the equity in the Property is property of the estate based upon the Debtor's monetary contributions towards the purchase, rehabilitation, and maintenance of the Property."[45]

Counts III and IV of the Amended Complaint seeks declarations that the Defendants were engaged in a joint venture and/or a partnership with regard to the purchase and rehabilitation of the Property, and asks the Court to declare that "at least ½ of the Property" is property of the bankruptcy estate.[46]

In a final, unnumbered count against both Defendants, the Amended Complaint alleges that the Defendants hold an interest in the Property either as a joint venture, partnership, or in a constructive trust, and seeks sale of the Property under 11 U.S.C. § 363(h).[47]

The Defendants filed a motion to dismiss and for summary judgment in response to the Amended Complaint (the "Defendants' Second Motion").[48] The arguments in this motion addressed the newly added claims of joint venture and partnership. The Trustee filed a response to the Defendants' Second Motion asking the Court not only to deny the motion, but also to

---

[45] *Id.* at pdf p. 5 ¶¶ 29-30.

[46] *Id.* at pdf pp. 6-8.

[47] *Id.* at pdf pp. 8-9.

[48] Docket # 94.

invoke its authority under Fed. R. Civ. P. 56(f)(1) to "sua sponte" enter summary judgment in favor of the Trustee on the joint venture and partnership counts of the Amended Complaint.[49]

The Court held a hearing on the Defendants' motions on November 18, 2020. At the conclusion of the hearing, the Court gave an oral bench opinion, ruling on the motions in part. With regard to the Second Motion, the Court granted summary judgment in favor of the Defendants on Counts III (joint venture) and IV (partnership) of the Amended Complaint. The Court also denied the Trustee's request for summary judgment in his favor on those counts. In all other respects, the Court took the Defendants' First and Second Motions under advisement.[50]

This Court has considered all of the oral and written arguments of the parties and all of the briefs and exhibits filed by the parties. For the reasons stated in this Opinion, the Court will deny the Defendants' First Motion and the Defendants' Second Motion with respect to the constructive trust claim (Count I), the delivery count (Count II), and the unnumbered sale count of the Amended Complaint.

### III. Standards governing the Defendants' motions to dismiss and for summary judgment

In *Wahrman v. Bajas (In re Bajas)*, 443 B.R. 768, 770-71 (Bankr. E.D. Mich. 2011), this Court discussed the standards for dismissal under Fed. R. Civ. P. 12(b)(6). The Court now incorporates by reference and applies what it stated in *Bajas* to the Defendants' motions to dismiss. Likewise, the Court incorporates the standards under Fed. R. Civ. P. 9(b) for pleading fraud with particularity, as described in its prior opinion, *Vara v. Spanabel (In re Spanabel)*, 618 B.R. 495, 508-09 (Bank. E.D. Mich. 2020).

---

[49] Docket # 104 at pdf p. 11.

[50] Order Regarding the Defendants' Motions to Dismiss/For Summary Judgment (Docket # 109).

In considering whether summary judgment should be granted, the Court has applied the standards governing summary judgment under Fed. R. Civ. P. 56, which the Court now incorporates by reference from its prior opinion in the case of *Schubiner v. Zolman (In re Schubiner)*, 590 B.R. 362, 376-77 (Bankr.E.D. Mich. 2018).

## IV. Discussion

As previously noted, the Trustee asks this Court to impose a constructive trust in favor of the bankruptcy estate upon the Property, which is titled in the name of Defendant Andrea Short.[51] The Defendants argue that such relief is barred by the Sixth Circuit Court of Appeals decision in *XL/Datacomp, Inc. v. Wilson (In re Omegas Group, Inc.)*, 16 F.3d 1443 (6th Cir. 1994), a case in which the court of appeals rejected a creditor's request to impose a constructive trust on certain property of the bankruptcy estate. The Defendants also argue that, under Michigan law, a constructive trust is not available absent a showing of fraudulent conduct, and that no fraud has been properly alleged or shown.

The Trustee responds by arguing that the reasoning underlying the *Omegas Group* decision does not apply in this case. The Trustee argues that *Omegas Group* applies only when an individual creditor seeks to use a constructive trust to carve certain property out of the bankruptcy estate, to the prejudice of other creditors. The Trustee argues that *Omegas Group* does not bar the imposition of a constructive trust when it would result in adding property to the

---

[51] Although Count I of the Amended Complaint is entitled "Constructive or Resulting Trust" it is clear from the language used in the Amended Complaint and the Trustee's briefs that the Trustee is seeking the imposition of a constructive trust. Moreover, it appears that common law "resulting" trusts are not enforceable under Michigan law. *Musial v. Yatzik*, 45 N.W.2d 329, 331 (Mich. 1951) (citing Mich. Comp. Laws § 555.7).

11

bankruptcy estate, for the benefit of all creditors.[52]  The Trustee also argues that, under Michigan

law, a constructive trust may be imposed not only based on fraud, but also based on unjust

enrichment.

## A.  Michigan law on constructive trusts

Under Michigan law a constructive trust is an equitable remedy.  *In re Swantek Estate*,

432 N.W.2d 307, 311 (Mich. Ct. App. 1988); *In re Filibeck Estate,* 853 N.W.2d 448, 449 (Mich.

Ct. App. 2014).  The imposition of a constructive trust "makes the holder of the legal title the

trustee for the benefit of another who in good conscience is entitled to the beneficial interest."

*Arndt v. Vos*, 268 N.W.2d 693, 695 (Mich. Ct. App. 1978).

> A constructive trust may be imposed where such trust is necessary
> **to do equity or to prevent unjust enrichment**.  Hence, such a
> trust may be imposed when property has been obtained through
> fraud, misrepresentation, concealment, undue influence, duress,
> taking advantage of one's weakness, or necessities, or any other
> similar circumstances **which render it unconscionable for the
> holder of the legal title to retain and enjoy the property**.

*Kammer Asphalt Paving Co., Inc. v. East China Twp. Schs.,* 504 N.W.2d 635, 641 (Mich. 1993)

(citations and quotations marks omitted) (emphasis added).  The burden of proof is upon the

person seeking the imposition of the constructive trust.  *Id.*

---

[52]  The Trustee cites cases from other federal circuits, which held that imposing a constructive
trust in favor of a Chapter 7 trustee, for the benefit of the bankruptcy estate, was permissible.  But the
courts in those cases were not bound by the Sixth Circuit's decision in *Omegas Group*, and they did not
discuss *Omegas Group*.  *See McGavin v. Segal* (*In re McGavin*), 220 B.R. 125 (D. Utah 1998), *aff'd.*,
189 F.3d 1215 (10th Cir. 1999) (applying Utah law on constructive trusts); *Wolff v. Tzanides* (*In re
Tzanides*), 574 B.R. 489 (Bankr. D. N.J. 2017) (applying New Jersey law on constructive trusts).

The Defendants argue that Michigan law requires a showing of fraudulent conduct before a constructive trust may be imposed, and that no such fraudulent conduct occurred.[53] The Court disagrees with the first of these arguments, and cannot accept the second argument on the present record, at the summary judgment stage.

First, the Court notes that the Trustee has alleged fraudulent conduct, in alleging that when Andrea Short acquired the Property in November 2009,

> even though Debtor and Mrs. Short intended to occupy the Property together and intended Debtor to make substantially all financial contributions to the Property, they made the decision to <u>fraudulently</u> title the Property solely in Mrs Short's name to protect it as the Debtor was insolvent at the time having his bankruptcy discharge denied less than 11 months prior to the acquisition of the Property.[54]

The Trustee has sufficiently alleged fraudulent conduct. *See Spanabel*, 618 B.R. at 508-09. And on the present factual record, there are genuine issues of material fact that prevent the Court from finding that no fraud occurred.

Second, under Michigan law, fraud is not required in order to impose a constructive trust. "'Fraud is not necessary to give rise to a constructive trust, but if circumstances are such as to render it inequitable for the holder of the legal title to retain the same, the court may charge it with a trust in favor of the equitable owner.'" *Digby v. Thorson,* 30 N.W.2d 266, 272 (Mich. 1948) (citation omitted).

Michigan cases have held that a constructive trust may be imposed to prevent unjust enrichment. An example is *Kent v. Klein*, 91 N.W.2d 11 (Mich. 1958). In that case, a mother

---

[53] Defendants' First Motion (Docket # 26) at pdf p. 15.

[54] First Am. Comp. (Docket # 85) at pdf p. 2 ¶ 10 (emphasis in original).

13

had deeded property to her children, excluding a son who was mentally incompetent at the time. A sister was deeded the interest intended for that son. When the son died, the sister refused to convey the son's interest to his heirs. The son's heirs asked the trial court to impose a constructive trust in their favor. *Id.* at 13. The trial court did so, after finding that it was the intention of the mother to have the property held for the benefit of her incompetent son. That decision was affirmed by the Michigan Supreme Court. In upholding the imposition of a constructive trust, the Supreme Court held: "[f]raud in the inception we do not require, nor deceit, nor chicanery in any of its varied guises, for it is not necessary that property be wrongfully acquired. It is enough that it be unconscionably withheld." *Id.* at 14. *See also Morris Pumps v. Centerline Piping, Inc.,* 729 N.W.2d 898, 908 (Mich. Ct. App. 2006) (citing *Kammer Asphalt*, 504 N.W.2d at 641) ("A court may impose a constructive trust when necessary to do equity or avoid unjust enrichment. A constructive trust may thus be imposed under any circumstance that renders it unconscionable for the holder of legal title to retain and enjoy the property."); *Estate of Dudley v. Knowles*, No. 256917, 2006 WL 626213 at *2 (Mich. Ct. App. Mar. 14, 2006) (citing *Kent v. Klein*, 91 N.W.2d 11 (Mich. 1958)) ("Defendant incorrectly argues that unjust enrichment alone cannot support the imposition of a constructive trust.").

Under Michigan law, fraud is not necessary to establish a claim for unjust enrichment; rather, a plaintiff simply must prove: "(1) the receipt of a benefit by the defendant from the plaintiff and (2) an inequity resulting to the plaintiff because of the retention of the benefit by the defendant." *Morris Pumps v. Centerline Piping, Inc.*, 729 N.W.2d 898, 904 (Mich. Ct. App. 2006); *see also Belle Isle Grill Corp. v. City of Detroit*, 666 N.W.2d 271, 280 (Mich. Ct. App.

2003). "Whether a specific party has been unjustly enriched is generally a question of fact." *Morris Pumps*, 729 N.W.2d at 903.

The Trustee has sufficiently alleged facts that state a plausible claim for unjust enrichment against Defendant Andrea Short.[55] And on the present record, there are genuine issues of material fact that prevent the Court from finding for the Defendants on the Trustee's unjust enrichment theory.

**B. Constructive trusts and bankruptcy - *In re Omegas Group***

*XL/Datacomp, Inc. v. Wilson* (*In re Omegas Group, Inc.*), 16 F.3d 1443 (6th Cir. 1994) was a Chapter 7 bankruptcy case, in which the Sixth Circuit Court of Appeals addressed a creditor's constructive trust argument. The creditor argued that because of fraud by the debtor, a constructive trust should be imposed on certain funds, so that those funds would not be part of the bankruptcy estate under 11 U.S.C. § 541(d). *Id.* at 1446. The Sixth Circuit rejected the creditor's argument.

First, the court noted that "[n]owhere in the Bankruptcy Code does it say, 'property held by the debtor subject to a constructive trust is excluded from the debtor's estate.'" *Id.* at 1448. It further noted that courts "which have excluded property from a debtor's estate as being subject to constructive trust, have done so on the authority of § 541(d), usually over the protestations of trustees asserting their strongarm powers." *Id.* at 1448. These courts determined that constructive trusts were equitable interests in the debtor's property excluded from the bankruptcy estate under § 541(d) and "that under § 541(d) constructive trusts are generally held to be

---

[55] *See* Am. Comp. (Docket # 85) at pdf p. 4, ¶¶ 23- 26.

15

superior in interest to the trustee, strongarm powers notwithstanding." *Id.* at 1449 (citing

*Vineyard v. McKenzie* (*In re Quality Holstein Leasing*), 752 F.2d 1009, 1013 (5th Cir. 1985)).

The Sixth Circuit disagreed with the reasoning of *Quality Holstein Leasing*, and like-

minded decisions, stating:

> The problem with the Fifth Circuit's analysis in *Quality Holstein Leasing*, and with the analyses of the vast majority of courts which have addressed bankruptcy claims based on constructive trust, is that a constructive trust is not really a trust. A constructive trust is a legal fiction, a common-law remedy in equity that may only exist by the grace of judicial action.

*Omegas Group*, 16 F.3d at 1449 (footnote omitted). The court further noted that:

> [a] constructive trust is merely a means by which the court can say that the defendant must relinquish to the plaintiff property that represents an unjust enrichment. . . . [A] claim filed in bankruptcy court asserting rights to certain assets "held" in "constructive trust" for the claimant is nothing more than that: a claim. Unless a court has already impressed a constructive trust upon certain assets or a legislature has created a specific statutory right to have particular kinds of funds held as if in trust, the claimant cannot properly represent to the bankruptcy court that he was, at the time of the commencement of the case, a beneficiary of a constructive trust held by the debtor.

*Id.* at 1449 (quoting Emily L. Sherwin, *Constructive Trusts in Bankruptcy*, 1989 U.Ill.L.Rev. 297

(1989)).

The Sixth Circuit explained that, while property rights, including property rights under a

constructive trust, are determined by the state law, "[u]ltimately, 'state law must be applied in a

manner consistent with federal bankruptcy law.'" *Id.* at 1450 (quoting *Torres v. Eastlick (In re*

*North American Coin & Currency, Ltd.)*, 767 F.2d 1573, 1575 (9th Cir. 1985). The court agreed

with the statement made in *Oxford Organization, Ltd. v. Peterson* (*In re Stotler and Co.*)), 144

16

B.R. 385, 388 (N.D. Ill. 1992) that "[a] constructive trust is fundamentally at odds with the

general goals of the Bankruptcy Code." *Id.* at 1451. It further stated:

> The reluctance of Bankruptcy Courts to impose constructive trusts
> without a substantial reason to do so stems from the recognition
> that each unsecured creditor desires to have his particular claim
> elevated above the others. Imposition of a constructive trust
> clearly thwarts the policy of ratable distribution and should not be
> impressed cavalierly.

*Id.* (quoting *Stotler*, 144 B.R. at 388).

The Sixth Circuit, in *Omegas Group*, expanded on this:

> We think that § 541(d) simply does not permit a claimant in the
> position of Datacomp to persuade the bankruptcy court to impose
> the remedy of constructive trust for alleged fraud committed
> against it by the debtor in the course of their business dealings, and
> thus to take ahead of all creditors, and indeed, ahead of the trustee.
> Because a constructive trust, unlike an express trust, is a remedy, it
> does not exist until a plaintiff obtains a judicial decision finding
> him to be entitled to a judgment "impressing" defendant's property
> or assets with a constructive trust. Therefore, a creditor's claim of
> entitlement to a constructive trust is not an "equitable interest" in
> the debtor's estate existing prepetition, excluded from the estate
> under § 541(d).

*Id.*

The court noted that a creditor who believed it was defrauded by a debtor would

understandably prefer to base its claim on a constructive rather than bringing a non-

dischargeability action under 11 U.S.C. § 523:

> [T]he creditor who prevails in proving his debt to be
> nondischargeable comes away from the bankruptcy proceeding
> with only his debt intact; he has no more assurance than he did
> prepetition that the debtor, having reorganized or otherwise
> received its "fresh start," will ever pay him back. On the other
> hand, if the creditor successfully argues that he "owns" the money
> or property owed him since the debtor's fraud gave rise to a

17

constructive trust, the creditor walks away with his debt fully satisfied, leaving the rest of the creditors to squabble over the remnants.

*Id.* at 1452 (citation omitted).

Nevertheless, the court stated:

> ***The equities of bankruptcy are not the equities of the common law. Constructive trusts are anathema to the equities of bankruptcy since they take from the estate, and thus directly from competing creditors, not from the offending debtor.*** "Ratable distribution among all creditors" justifies the Code's placement of the trustee in the position of a first-in-line judgment creditor and bona fide purchaser for value, empowered to avoid certain competing interests (and even to nullify the debtor's "preferential" prepetition payments to otherwise entitled creditors) ***so as to maximize the value of the estate***. To a party defrauded by the debtor, incorporating the proceeds of fraud in the debtor's estate may seem like allowing the "estate to benefit from property that the debtor did not own." *Quality Holstein Leasing*, 752 F.2d at 1013. But as the Seventh Circuit has pointed out, "allowing the estate to 'benefit from property that the debtor did not own' is exactly what the strong-arm powers are about: ***they give the trustee the status of a bona fide purchaser for value, so that the estate contains interests to which the debtor lacked good title.***" *Belisle v. Plunkett*, 877 F.2d 512, 516 (7th Cir.1989) (criticizing *Quality Holstein Leasing* ). ***The Code recognizes that each creditor has suffered disappointed expectations at the hands of the debtor; for this reason, it makes maximization of the estate the primary concern and entitlement to shares of the estate secondary. Imposing a constructive trust on the debtor's estate impermissibly subordinates this primary concern to a single claim of entitlement.***

*Id.* at 1452-53 (Emphasis added.). The court concluded that "[t]o permit a creditor, no matter how badly he was 'had' by the debtor, to lop off a piece of the estate under a constructive trust theory is to permit that creditor to circumvent completely the Code's equitable system of distribution." *Id.* at 1453.

**C.  Sixth Circuit cases decided after *Omegas Group***

18

As this Court has previously noted, three later Sixth Circuit decisions have "clarified and narrowed" the holding in *Omegas Group*. *See In re Blume*, 582 B.R. 178, 180 (Bankr. E.D. Mich. 2017).

In *McCafferty v. McCafferty* (*In re McCafferty*), 96 F.3d 192 (6th Cir. 1996), the ex-wife of the debtor argued that her share of the debtor's pension benefits, awarded to her by a divorce decree, was held by the debtor in constructive trust, and could not be considered part of the bankruptcy estate. *Id.* at 194. The debtor argued that *Omegas Group* barred the ex-wife from prevailing on the constructive trust theory. *Id.*

The Sixth Circuit rejected the debtor's argument. The court distinguished the situation before it from the facts in *Omegas Group*, first noting that the ex-wife was not "in the same position" as the creditor in *Omegas Group*. *Id.* at 196. The court then stated:

> *Omegas Group* arose out of a situation in which a claim based on state property law could not be reconciled with a major goal of federal bankruptcy law - ratable distribution among creditors . . . . When such a conflict occurs, bankruptcy policy prevails. The Supreme Court has noted, however, that the policy of ratable distribution would not be relevant where the property at issue was not subject to distribution to creditors.

*Id. at* 196-97 (citing *Begier v. I.R.S.*, 496 U.S. 53, 58 (1990)). The *McCafferty* court noted that, in the case before it, the funds in the debtor's pension plan would not have been reachable by creditors, even after he filed for bankruptcy and thus, recognizing a constructive trust in favor of the ex-wife under state law "would not hinder bankruptcy policy inasmuch as it would not diminish the pro rata share of any other creditors of the debtor." *Id.* at 197. The court concluded that, under Ohio law, the divorce decree created a constructive trust to protect the former

19

spouse's interest in the pension plan, and that her interest never became part of the bankruptcy estate. *Id.* at 198-99.

In *Kitchen v. Boyd* (*In re Newpower*), 233 F.3d 922 (6th Cir. 2000), the plaintiffs asked the bankruptcy court to lift the automatic stay with respect to money that the debtor had embezzled, arguing that the embezzled funds were not property of the estate. *Id.* at 926.

The Sixth Circuit noted that the plaintiffs sought to lift the bankruptcy stay so that they could "proceed with their action in state court - filed prior to [the debtor's] petition in bankruptcy - claiming, *inter alia*, [the debtor's] conversion of their funds and seeking the recovery of those funds from [the debtor] and/or third parties and the imposition of a constructive trust on the property [the debtor] purchased with the stolen funds." *Id.* at 935. The court rejected the trustee's argument that the *Omegas Group* case prevented the bankruptcy court from imposing a constructive trust and prevented the plaintiffs from recovering property ahead of other creditors. *Id.* The court held that nothing in *Omegas Group* prevents the lifting of the automatic stay where, as in the case before it, a state court action seeking to impose a constructive trust had already been initiated at the time the bankruptcy case was filed. *Id.* The court noted that "the question of either obtaining or enforcing a state court judgment holding that the equitable interest belonged to someone other than the debtor" was not presented in *Omegas Group*. *Id.* at 936. The court further explained that:

> *In re Omegas* did not present a situation in which the debtor was a thief, and it did not purport to answer the question of the enforcement of a state court judgment under the circumstances presented by this case. *In re Omegas* presented the more common situation in which all the creditors have come to the bankruptcy court after having transferred property to the debtor in the ordinary course of business only to discover that the debtor was unable to

pay them back, and was aware of its inability to pay even while engaging in the business transactions. Before *In re Omegas*, each of those unsecured creditors would rush to the bankruptcy court to argue that debtor's dealings with it were more egregious than his dealings with the others and the debtor's bad conduct justified special treatment, i.e., the imposition of a constructive trust by the bankruptcy court. *In re Omegas* spoke definitively to quash such postpetition scrambling by creditors pushing to a place at the head of the line.

*Id.* at 936. The court in *Newpower* concluded that the stay could be lifted to permit the plaintiffs to continue with their pre-petition state court action seeking the imposition of a constructive trust, and if they obtained a judgment in state court, the bankruptcy court would not be barred by *Omegas Group* from enforcing that judgment. *Id.* at 937.

Lastly, in *Poss v. Morris* (*In re Morris*), 260 F.3d 654 (6th Cir. 2001), a creditor argued that a constructive trust had arisen under state law in favor of the creditor prior to the filing of the bankruptcy case, and the creditor relied on 11 U.S.C. § 541(d) to argue that such property was not part of the bankruptcy estate. *Id.* at 665. The constructive trust claim was based on a state court's pre-petition decision finding that the debtor had a duty to convey certain real property at issue. *Id.* at 668.

The Sixth Circuit, citing *Omegas Group*, noted that "we have been clear that [§ 541(d) does not authorize bankruptcy courts to recognize a constructive trust based on a creditor's claim of entitlement to one; rather, section 541(d) only operates to the extent that state law has impressed property with a constructive trust prior to its entry into bankruptcy." *Id.* at 666. The court further explained:

> Since deciding *Omegas Group*, we have clarified several relevant points. We have recognized that imposition of a constructive trust might be appropriate when property in bankruptcy was not subject

to distribution to creditors and so did not implicate the rationale of ratable distribution. *McCafferty v. McCafferty* (*In re McCafferty*), 96 F.3d 192, 196-97 (6th Cir.1996) (quoting *Begier v. IRS*, 496 U.S. 53, 58, 110 S.Ct. 2258, 110 L.Ed.2d 46 (1990)). We have also recently made clear that *Omegas Group* addressed the relatively common situation in which a creditor with a claim arising in the ordinary course appeals to the bankruptcy court for preferential treatment . . . . In [*Kitchen v. Boyd (In re Newpower)*], 233 F.3d 922, 936 (6th Cir.2000),] we held that creditors who had initiated proceedings in state court prepetition may have the automatic stay lifted to pursue their action and that our decision in *Omegas Group* "does not bar the enforcement of such a judgment by the bankruptcy court." *Id.* at 937.

*Id.* at 667.

The *Morris* court determined that, under Ohio law, a constructive trust had been

impressed upon the property pre-petition. The court concluded that:

> This case addresses one of the questions *Newpower* noted remained open following *Omegas Group*, namely whether the bankruptcy court may give effect to a state court judgment obtained postpetition in an action initiated prepetition. We answer that question affirmatively, reaffirming that state law governs the effective date of such a judgment. As we held in *Newpower*, *Omegas Group* does not present a bar to the imposition of a constructive trust on the facts of this case.

*Id.* at 669.

## D. Conclusions from *Omegas Group* and the later Sixth Circuit cases

This Court agrees with the Trustee that *Omegas Group* does not prevent this Court from

imposing a constructive trust in this case, for the following reasons.

First, as was explained by the Sixth Circuit in *Newpower* and *Morris*, "*Omegas Group*

addressed the relatively common situation in which a creditor with a claim arising in the ordinary

22

course appeals to the bankruptcy court for preferential treatment." *In re Morris,* 260 F.3d at 666-67 (citing *In re Newpower*, 233 F.3d at 936). That situation is not present in this case.

Second, the reason for prohibiting a constructive trust in the "common situation" is that a constructive trust would take assets from the bankruptcy estate, in direct conflict with the bankruptcy policy of ratable distribution among all creditors. As the court stated in *Omegas Group:* "Constructive trusts are anathema to the equities of bankruptcy since they take from the estate, and thus directly from competing creditors . . . ." *Omegas Group,* 16 F.3d at 1452; *see also McCafferty*, 96 F.3d at 196 ("The [court in *Omegas Group*] emphasized that the imposition of a constructive trust in that case would have undermined completely one of the Bankruptcy Code's primary goals - equitable distribution - taking value directly from the fair share of competing creditors. . . ."). That concern does not apply in the present case.

Lower courts within the Sixth Circuit also have recognized that the reason underlying the *Omegas Group* decision is the protection of the bankruptcy policy of ratable distribution. In *United States v. NBD Bank,* 922 F. Supp. 1235 (E.D. Mich. 1996), a non-bankruptcy case, the Government sought to recover funds from a bank that "were improperly diverted from a federally-backed mortgage program and then allegedly given to [the bank] in repayment of a loan." *Id.* at 1240. One of the claims made by the Government was for the imposition of a constructive trust on the funds. The bank argued that, because the entity that had paid the funds to the bank, Fidelity Guarantee Mortgage Corporation, was in bankruptcy, a constructive trust could not be imposed under *Omegas Group*. The district court rejected the argument, holding:

> The rationale behind [the holding in *Omegas Group*] was that
> "each unsecured creditor desires to have his particular claim
> elevated above the others. Imposition of a constructive trust clearly

thwarts the policy of ratable distribution . . . ." The court further supported its decision by noting that "[c]onstructive trusts are anathema to the equities of bankruptcy since they take from the estate, and thus directly from competing creditors, not from the offending debtor."

The present case can be distinguished from *Omegas*. To begin with, this is not a bankruptcy case. The funds being sought in this case are in the hands of NBD, not Fidelity's bankruptcy estate. The funds were transferred before the bankruptcy proceedings. Therefore, at the commencement of the bankruptcy proceedings, they were not assets of Fidelity. Thus, the rationale of the rule in *Omegas* clearly does not apply. If this court imposes a constructive trust over these funds, ratable distribution of the bankruptcy estate will *not* be affected because the funds are not being taken from the estate.

*Id. at* 1243 (citations omitted).

Additionally, in *Mason v. Zorn Indus., Inc.* (*In re Underground Storage Tank Tech. Serv. Group, Inc.*), 212 B.R. 564, 571 (Bankr. E.D. Mich. 1997), the court stated that "[a] central premise of the [*Omegas Group* opinion] was that the constructive trust doctrine is contrary to the principle of parity among creditors." In *In re Dow Corning Corp.*, 192 B.R. 428 (Bankr. E.D. Mich. 1996), the court determined that the rationale behind the *Omegas Group* decision is "solely bankruptcy policy," noting that "*Omegas* found there to be a conflict between the federal bankruptcy policy of ratable distribution and state property law on constructive trusts." *Id.* at 440-41.

This Court concludes that a constructive trust may be imposed in bankruptcy, where doing so does not conflict with the policy of ratable distribution to creditors. In *McCafferty*, a constructive trust was imposed upon pension plan benefits which were not reachable by creditors, even after the debtor filed bankruptcy, so recognizing a constructive trust would not

24

affect the pro rata distribution of any creditor. *McCafferty*, 96 F.3d at 197. In *United States v. NBD Bank*, discussed above, the court distinguished *Omegas Group*, noting that the imposition of a constructive trust over the funds at issue would not affect the ratable distribution of the bankruptcy estate, because the funds were not being taken from the estate. *United States v. NBD Bank,* 922 F. Supp. at 1243.

More specifically, case law supports the conclusion that where, as here, it is the bankruptcy trustee who seeks to impose a constructive trust, in an effort to increase the funds available for distribution to all creditors, the concerns expressed by the court in *Omegas Group* do not apply.

In *Mason v. Zorn, supra*, a bankruptcy trustee used a constructive trust theory to try to recover certain funds for the bankruptcy estate. The court discussed *Omegas Group* in this way:

> A central premise of the [*Omegas Group* opinion] was that the constructive trust doctrine is contrary to the principle of parity among creditors. . . . Where, as here . . . , it is the estate which seeks to invoke the doctrine, that concern is of course not implicated.
> . . . .
>
> To the contrary, such use of the doctrine would subserve what *Omegas* called "the equities of bankruptcy," creating a larger estate from which creditors could be paid according to the priorities of the Code. It therefore could be argued that *Omegas* does not preclude the trustee from invoking the doctrine of constructive trust.

*Mason*, 212 B.R. at 571 (citations omitted).[56]

---

[56] Ultimately, the court in *Mason* determined that the trustee failed to prove the allegation that the debtor had an interest in the funds that had been paid to the third party. *Mason*, 212 B.R. at 573.

In *Richardson v. Huntington Nat'l Bank* (*In re Cyberco Holdings, Inc.*), 382 B.R. 118 (Bankr. W.D. Mich. 2008), the court dismissed a trustee's claim for a constructive trust on money transferred to a third party, where the trustee's complaint did not specifically identify the property that was to be the subject of the constructive trust. *Id.* at 129. However, the court, citing *Mason,* noted that, in the appropriate circumstances, a trustee could have a claim for a constructive trust:

> This is not to suggest that a bankruptcy trustee could not have a claim for a constructive trust in the appropriate circumstances. For example, if a debtor had a claim immediately before the commencement of a case that justified imposing a constructive trust upon the third party, it is axiomatic that the bankruptcy trustee would succeed to that cause of action by operation of Section 541(a)(1).

*Id.* at 129 n.10 (citation omitted).

In this case, the Trustee, acting under the authority of 11 U.S.C. 541(a)(1), is seeking to augment the bankruptcy estate by pursuing the pre-petition claim of the Debtor (which is now property of the bankruptcy estate) for the imposition of a constructive trust, based upon pre-petition conduct amounting to unjust enrichment and/or fraud. Imposing a constructive trust on the Property would add value to the bankruptcy estate, for the benefit of all creditors. The bankruptcy policy of ratable distribution is not adversely impacted at all under the facts of this case.

**E. The Defendants' motions must be denied.**

The Defendants' motion to dismiss the remaining counts of the Amended Complaint must be denied. The claim seeking the imposition of a constructive trust is not barred as a matter of law; this Court is not prohibited by *Omegas Group* from imposing a constructive trust.

26

Moreover, the Amended Complaint states plausible claims of fraud and unjust enrichment that may support imposition of a constructive trust under Michigan law.

The unresolved portion of the Defendants' motions for summary judgment[57] also must be denied. Based upon the Defendants' arguments in their motions, and the evidence currently in the record, described in Part II.A of this Opinion, genuine issues of material fact preclude summary judgment for the Defendants on the Trustee's claim that, under Michigan law, a constructive trust should be imposed on the Property in favor of the bankruptcy estate.

## V. Conclusion

For the reasons stated above, the Court will enter an order denying the Defendants' First Motion and denying the unresolved portion of the Defendants' Second Motion.

**Signed on February 16, 2021**



/s/ Thomas J. Tucker

Thomas J. Tucker
United States Bankruptcy Judge

---

[57] As noted above, the Court previously granted summary judgment in favor of Defendants on the Trustee's claims based on theories of joint venture and partnership (Counts III and IV of the Amended Complaint).

27